IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NABORS DRILLING TECHNOLOGIES USA, INC., | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:20-cv-03126-M |
| v. | § § | |
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO., et al., | § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Nabors Drilling Technologies USA, Inc.'s Motion for Preliminary Injunction (ECF No. 2). The Motion was presented at a hearing on November 3, 2021 (ECF No. 119). The parties argued their positions but rested on Declarations and other evidence they submitted in writing, with no live testimony. For the following reasons, the Motion is **DENIED**.

**I. Background**

This is a patent infringement lawsuit between two providers of drilling services. Plaintiff Nabors Drilling Technologies USA, Inc. ("Nabors") alleges it owns and operates a large land-based drilling rig fleet, provides offshore platform rigs in the United States and abroad, and provides innovative drilling technology and related instrumentation and software. Complaint (ECF No. 1) ¶ 8. Nabors sued Defendants Helmerich & Payne International Drilling Company, Helmerich & Payne Technologies, LLC, and Motive Drilling Technologies, Inc. (collectively,

1

"H&P") for infringement of eight patents relating to methods for control of computerized drilling and rotary steerable systems.[1]

Nabors' infringement allegations focus on autonomous directional drilling. U.S. Patent No. 8,510,081 (the "'081 Patent") describes directional drilling as "typically refer[ing] to drilling in which the trajectory of the drill string is inclined directionally, between about 10° and about 90°." '081 Patent at 1:15–24.

To perform directional drilling, the driller must have "real-time knowledge of the angular orientation of a fixed reference point on the circumference of the drill string in relation to a reference point on the wellbore." *Id.* at 1:60–64. Traditionally, "the relationship between the toolface and the quill position can only be estimated by the human operator, or by using specialized drilling equipment." *Id.* at 2:25–27. Once the relationship is estimated, the drill can be kept on course either by a human operator, or by a software-automated process. *Id.*

Nabors' primary products are drilling rigs, which consist of physical components for drilling a well, and software programs that allow a person or a computer to run and steer the drill so that it moves in the desired direction. Nabors Ex. 1 (ECF No. 2-1), Declaration of Christopher Papouras ¶¶ 26–31; Nabors Ex. 13 (ECF No. 2-14) at 3. Nabors contends that its patents, the '081 Patent and U.S. Patent No. 7,823,655 (the "'655 Patent") cover its products, including its SmartSLIDE technology, a software program that automates the directional drilling process, and those are the patents on which Nabors seeks injunctive relief. Compl. ¶ 24.

---

[1] Nabors asserts that H&P infringes claims of U.S. Patent No. 7,802,634; U.S. Patent No. 7,823,655; U.S. Patent No. 7,860,593; U.S. Patent No. 8,360,171; U.S. Patent No. 8,510,081; U.S. Patent No. 8,528,663, and U.S. Patent No. 10,672,154. Nabors previously asserted U.S. Patent No. 7,938,197, but has since withdrawn its claims under that patent. *See* ECF No. 78 at n.1. H&P counterclaimed that Nabors infringes U.S. Patent No. 8,210,283, U.S. Patent No. 9,865,022, U.S. Patent No. 10,726,506, and U.S. Patent No. 10,208,580. *See* ECF No. 54.

The '081 Patent, entitled "Drilling Scorecard," is directed to a method, system, and apparatus for evaluating drilling accuracy performance in drilling a wellbore. '081 Patent, Abstract. Nabors argues that it can establish a likelihood of success on the merits of its contention that H&P infringes Claim 1 of the '081 Patent, which claims:

> A method of evaluating drilling performance in a wellbore, which comprises:
>
> monitoring, during wellbore drilling, an actual toolface orientation of a downhole steerable motor by monitoring a drilling operation parameter indicative of a difference between the actual toolface orientation and a toolface advisory;
>
> recording, at a plurality of times during the wellbore drilling, the difference between the actual toolface orientation and the toolface advisory;
>
> scoring each of the differences between the actual toolface orientation and the toolface advisory by assigning respective values to the differences, each of the values representing drilling performance at the corresponding time at which the corresponding difference was recorded, each of the values depending on the corresponding difference;
>
> generating a total score, the total score being based on a sum of the values, the total score indicating the degree to which the actual toolface orientation was kept in a correct orientation over the plurality of times during the wellbore drilling; and
>
> providing at least the total score to an evaluator.

The '655 Patent, entitled "Directional Drilling Control," is directed to an apparatus and method for using a quill to steer a hydraulic motor when elongating a wellbore in a direction having a horizontal component. '655 Patent, Abstract. Claim 1 of the '655 Patent, infringement of which Nabors raises as grounds for a preliminary injunction, claims:

> A method of using a quill to steer a hydraulic motor when elongating a wellbore in a direction having a horizontal component, wherein the quill and the hydraulic motor are coupled to opposing ends of a drill string, the method comprising:
>
> monitoring an actual toolface orientation of a tool driven by the hydraulic motor by monitoring a plurality of drilling operation parameters each indicative of a

3

>difference between the actual toolface orientation and a desired toolface orientation; and
>
>adjusting a position of the quill by an amount that is dependent upon each of the plurality of the monitored drilling operation parameters.

'655 Patent at Claim 1.

Nabors alleges that H&P's AutoSlide copies its SmartSLIDE autonomous directional drilling technology, and infringes the '081 and '655 Patents. Compl. (ECF No. 1). Nabors contends that H&P and Nabors are direct competitors. Nabors Ex. 1 (ECF No. 2-1) ¶ 31. Nabors presented evidence that H&P owns drilling rig fleets, and conducts directional drilling operations with instrumentation and software that it manufactures and sells. Nabors Ex. 9 (ECF No. 2-10) at 4–10. The parties contend that they each offer an integrated suite of tools, and once a customer selects a drilling provider, customers are limited to the products offered by that driller, and cannot combine products from different firms. Nabors Ex. 1 ¶¶ 50, 66; Nabors Ex. 18 (ECF No. 2-19) at 3; H&P Ex. Q (ECF No. 30) ¶ 7. For example, if a customer chooses to retain Nabors to drill, it cannot use on a Nabors drilling rig hardware or software from H&P. Response (ECF No. 29) at 3.

Nabors seeks by its Motion to prohibit H&P from commencing any new jobs or extending existing contracts using AutoSlide, claiming such acts would infringe the '081 and '655 Patents.[2] Mot. at 24.

## II. Legal Standard

The Patent Act authorizes district courts to grant injunctions to prevent the infringement of patent rights. 35 U.S.C. § 283. To obtain a preliminary injunction, the moving party must

---

[2] Nabors initially also sought a preliminary injunction on Claim 19 of U.S. Patent No. 7,860,593 (the "'593 Patent"). *See* Mot. at 1. Prior to the hearing on November 3, 2021, Nabors informed the Court that it was no longer seeking preliminary injunctive relief as to that claim. ECF No. 114.

4

show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) the substantial injury outweighs the threatened harm to the nonmovant, and (4) granting the injunction will not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Movant has the burden to show that these requirements are satisfied. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).

### III.  Analysis

Nabors presented two Declarations in support of its claim for injunctive relief. The first is from Christopher Papouras, former president of Nabors Drilling Solutions, and now its consultant (ECF No. 2-1). The second is from Robert Bowick, Plaintiff's counsel, authenticating various documents (ECF No. 2-33). Papouras provides technical information about directional drilling, the patents, and the relevant technology, but provides no damage information.

Nabors maintains that there is a substantial likelihood that it will be able to show at trial that H&P's use of the AutoSlide infringes the '081 and '655 Patents, and that H&P's infringement has caused it to suffer irreparable harm through loss of market share, price erosion, harm to its reputation, and loss of its goodwill. Nabors further argues that the balance of hardships and the public interest favors injunctive relief.

A court may deny a preliminary injunction based on the absence of a single element alone, without reaching the other elements. *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019). Here, the Court concludes that Nabors has not carried its burden of showing a substantial threat of irreparable injury if the injunction is not granted. Because an injunction cannot be granted without such proof, the Court must deny Nabors' Motion for a Preliminary Injunction.

**A. Nabors Did Not Prove Its Allegations of Irreparable Harm.**

A movant seeking a preliminary injunction must show that "irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added). A bare assertion of irreparable harm, or even a possibility of irreparable harm, is not sufficient, because "a possibility of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Id.*; *see also Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349–50 (Fed. Cir. 2020); *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013). There is no presumption of irreparable harm in the injunctive relief context. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

Nabors argues that every sale of H&P's AutoSlide services is a lost sale for Nabors' SmartSLIDE because well owners and operators tend to be very brand loyal, and when a customer purchases allegedly infringing AutoSlide services from H&P, they are likely to remain an AutoSlide customer for future oil and gas drilling contracts. Mot. at 17. Nabors contends that these potential lost sales for Nabors constitute irreparable harm. Assuming lost sales could constitute irreparable harm to Nabors which would warrant injunctive relief, Nabors does not prove it lost even a single sale due to the alleged infringement. Nabors does not offer evidence that customers chose H&P for drilling services because of AutoSlide, nor that they would have purchased Nabors' service if H&P did not have AutoSlide. Nor did Nabors provide evidence that it suffered a decline in market share in favor of H&P. *Cf. Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361–62 (Fed. Cir. 2008). Put simply, Nabors did not provide witness testimony,

expert testimony, or documentary evidence to establish lost sales or loss of market share because of the alleged infringement.

Nabors approaches this matter, as it did at the injunction hearing, as if it and H&P compete in a two-player market. The Federal Circuit, in a non-precedential opinion, upheld a finding of irreparable harm based on lost sales, where the patentee established that the market in question was a two-player market, so that a lost sale for one company was presumptively a gained sale for another. *Liqwd, Inc. v. L'Oréal USA, Inc.*, 720 F. App'x 623, 633 (Fed. Cir. 2018); *accord Robert Bosch, LLC*, 659 F.3d at 1151 ("[T]he existence of a two-player market may well serve as a substantial ground for granting an injunction."). However, Nabors did not prove that the autonomous directional drilling market is a two-player market. In fact, Nabors' former president named three top U.S. competitors of Nabors for land rigs and associated drilling services. Nabors Ex. 1, Papouras Decl. ¶ 31.

Nabors further argues that H&P's alleged infringement has caused irreparable harm to Nabors' reputation drilling potential drilling customers may experience confusion between SMARTSlide and AutoSlide. Such harm is entirely speculative. *See* Mot. at 20 ("the irreparable harm to Nabors will be compounded **if** Defendant's infringing AutoSlide services cause customer dissatisfaction" (emphasis added)). Nabors offered no evidence from witnesses, documents, or otherwise of any actual or potential customer confusion between the SmartSLIDE and AutoSlide products, and thus any alleged reputational injury is speculative. *See Winter*, 555 U.S. at 22.

Although there are cases where courts granted preliminary injunctions based on theories like the ones Nabors argues, they did so based on concrete and specific evidence from the record, not on mere attorney argument, as is the case here. *See AstraZeneca LP*, 633 F.3d at 1062;

*Abbott Labs.*, 544 F.3d at 1361–62; *Reebok*, 32 F.3d at 1557–58; *Nanoexa Corp. v. Univ. of Chi.*, No. 10-CV-2631-LHK, 2010 WL 3398532, at *5 (N.D. Cal. Aug. 27, 2010); *Golden Hour Data Sys. Inc. v. Emscharts, Inc*, No. 2:06-CV-381 2014 WL 8708239, at *9 (E.D. Tex. Apr. 3, 2009).

### B. Nabors Did Not Show a Nexus Between the Alleged Irreparable Harm and the Alleged Infringement.

Even if Nabors had proven irreparable harm, an injunction is nevertheless unwarranted because Nabors did not establish a nexus – that is, that the claimed harm "is sufficiently related to [H&P's] infringement." *Apple Inc. v. Samsung Elecs. Co.* ("*Apple II*"), 695 F.3d 1370, 1373 (Fed. Cir. 2012). In other words, "it is necessary to show that the infringement caused harm in the first place." *Apple Inc. v. Samsung Elecs. Co.* ("*Apple I*"), 678 F.3d 1314, 1324 (Fed. Cir. 2012). To be entitled to a preliminary injunction, Nabors must show that its alleged irreparable harm was at least partially caused by H&P's alleged infringement of the '081 and '655 Patents.

Regarding lost sales, the Federal Circuit has recognized that "[w]here the patentee relies on lost sales to show irreparable injury, it matters what reasons various buyers have for making the purchases lost to the patentee." *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 (Fed. Cir. 2017). If the patented feature does not have some connection to a product's demand, sales would presumably be lost even if the offending feature were absent, and therefore a likelihood of irreparable harm is not shown. *Apple II*, 678 F.3d at 1324; *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013) ("*Apple III*"); *Apple, Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640-43 (Fed. Cir. 2015) ("*Apple IV*").

Nabors argues that because the allegedly infringing AutoSlide system is just one feature of drilling rigs leased by H&P, it need not show that the patented feature "drove sales" of the entire product. ECF No. 116 ¶¶ 3–4. However, the fact that the drilling rigs leased by H&P may contain other non-infringing features does not obviate the requirement to establish a nexus.

Nabors must still show "some connection between the patented feature and demand" for H&P's product. *Apple III* at 1354 (Fed. Cir. 2013). That could include evidence, for example, "that a patented feature is one of several features that cause consumers to make their purchasing decisions" or "that the inclusion of a patented feature makes a product significantly more desirable." *Id.* Put simply, in the multi-consumer, multi-feature context, a patentee must still establish that the patented feature has some connection to the purchase. *Genband*, 861 F.3d at 1382.

Nabors did not provide evidence connecting AutoSlide's allegedly infringing features to purchases of H&P's drilling services. Autonomous directional drilling technology is only one of many drilling-related services Nabors and H&P offer, and potential consumers consider many factors in deciding which provider to use. *See* Nabors' Post-Hearing Brief (ECF No. 116) ¶¶ 3–4. Yet to show nexus, Nabors must show not only that potential customers *could* consider the autonomous directional drilling technology as part of their reason for choosing a drilling service provider, but that customers *did* consider it. Nabors did not make the requisite showing for a preliminary injunction because it offered no documents, reviews, surveys, testimony, or other evidence showing that the AutoSlide technology even partially drove the sales of H&P's drilling services.

As additional evidence of nexus, Nabors contends that the "infringing AutoSlide services have feature and user interfaces that are virtually identical to those on Nabors' patented SmartSLIDE system." Nabors Mot. at 18 n.63. This argument fails for two reasons. First, Nabors has not established, nor is it apparent, that the allegedly infringed claims of the '081 and '655 Patents alleged by Nabors as a basis for injunctive relief—both method claims—cover the interfaces of either system at issue. The visual similarity of the two systems does not establish

nexus for purposes of an irreparable harm analysis. Second, even assuming that AutoSlide's interface practices Nabors' patents, Nabors has not offered any evidence that the allegedly identical user interfaces even partially influenced customers' purchasing decisions.

Nabors also alleges that there is a nexus between the infringement and its alleged lost sales because H&P's CEO announced that H&P had a goal to make its AutoSlide technology the "industry standard." Mot. at 14. Nabors argues that if H&P succeeds in its goal to create an industry standard, Nabors would be denied the benefit of its patents and suffer irreparable harm.

This alleged harm is too speculative to warrant the extraordinary remedy of injunctive relief. Nabors has provided no evidence that this goal of H&P's CEO reflects a likelihood that H&P will establish a standard to which the rest of the market will adhere. Nabors fails to distinguish "between irreparable harm caused by patent infringement and irreparable harm caused by otherwise lawful competition." *Apple III*, 735 F.3d at 1361. While the statements of H&P's CEO suggest that without the AutoSlide technology, customers might not choose H&P's services, they do not establish that without the AutoSlide technology, customers *would* choose Nabors' services over those of H&P and other market participants.

At the hearing, Nabors argued that H&P's advertising proves that H&P intends for customers to choose its services because of the AutoSlide technology. In those advertising materials, H&P holds itself out as the industry leader in U.S. drilling, describes itself as the industry's "most trusted drilling partner," and touts products other than the AutoSlide,[3] as well as its consistent operational excellence in the areas of safety, customer satisfaction, reliability, and technological innovation. Nabors Ex. 10 (ECF No. 2-11) at 5; Nabors Ex. 13 (ECF No. 2-14) at 6–7, 10–11; Nabors Ex. 17 (ECF No. 2-18) at 4–5; *see also* H&P Ex. Q ¶¶ 2–5, 8. While Nabors

---

[3] For example, the advertising materials refer to H&P's FlexRig fleet, which are rigs that can slide along rails to drill multiple wells on a single well pad without being dismantled and reassembled. Nabors Ex. 10 at 4.

10

has shown that the parties advertise their SmartSLIDE and AutoSlide technologies as one reason a customer *could* choose one company over the other, there is no evidence that a customer *did* or *is likely to* choose one driller over another in part because of those products. Nabors failed to make the necessary showing that the AutoSlide has some connection to consumer demand for H&P's products. *Genband*, 861 F.3d at 1382. Because Nabors did not show that nexus between the alleged infringement and the claimed irreparable injury, an injunction should not issue.

## IV.   Conclusion

Nabors' Motion for a Preliminary Injunction is **DENIED**.

**SO ORDERED**.

February 18, 2022.

_____
BARBARA M. G. LYNN
CHIEF JUDGE